IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

UNITED STATES OF AMERICA,
*ex rel.* NORMAN RILLE and
NEAL ROBERTS                                                                    PLAINTIFF

v.                                             4:04CV00988-BRW

CISCO SYSTEMS, INC.                                                            DEFENDANT

## ORDER

Pending is Norman Rille and Neal Roberts ("Relators") Motion for Determination of

Relators' Share of Settlement Proceeds (Doc. No. 177). The Government has responded[1] and

Relators have replied.[2] Also pending is the Government's Cross-Motion to Dismiss Relators'

Third Amended Complaint for Failure to Plead With Particularity (Doc. No. 187). Relators have

responded.[3] For the reasons set out below, the Government's Cross-Motion to Dismiss is

DENIED, and the Relators' Motion for Determination of Relators' Share is GRANTED.

## I.    BACKGROUND

Relators filed this *qui tam* action (along with multiple others) on September 17, 2004.

Cisco Systems, Inc. ("Cisco") was added as a defendant in this case September, 2005.  Relators'

Third Amended Complaint (the "Complaint"), dated October 25, 2006, alleges that Cisco

violated the False Claims Act, the Anti-Kickback Act, and other laws.[4] The Relators maintained

---

[1]Doc. Nos. 187, 188.

[2]Doc. No. 217.

[3]*Id.*

[4]Doc. No. 40. The Third Amended Complaint named numerous other defendants, none of
which remained parties by the time of this Order.

this case on their own for about three-and-a-half years until the Government decided that "it is in

the interests of the United States to intervene at this time."[5]

On September 7, 2010, the Government filed a Notice of Settlement.[6] The Settlement

Agreement alleges that Cisco and another company, Comstor,[7]

> (1) made inaccurate and/or incomplete disclosures and/or false statements, and/or
> presented or caused to be presented false claims to the United States; (2) failed to
> disclose relevant discount, rebate, true-up, benefits, credits, value-added, and pricing
> information to the United States and, as a result, Contract pricing and orders issued
> pursuant to the Contract were inflated; (3) as a result of the defective disclosures of
> pricing information, submitted or caused to be submitted false or fraudulent claims
> for payment; and (4) failed to comply with price reduction obligations under the
> Contract and related letters of supply.[8] ("Covered Conduct")

In exchange for the Government's release of claims against them, Cisco agreed to pay the United

States $44.16 million, and Comstor agreed to pay $3.84 million. The Settlement Agreement did

not resolve whether Relators are entitled to a share of the settlement proceeds.[9]

On September 28, 2010, the United States filed a Stipulation of Dismissal with

prejudice.[10] Under the Stipulation of Dismissal, this Court retained jurisdiction of determining

Relators' share, if any, of settlement proceeds.[11] A March 28, 2011 Order directed the parties to

---

[5]Doc. No. 84. The Motion to Intervene was granted on March 25, 2008. Doc. No. 85.

[6]Doc. No. 142.

[7]Comstor is now known as Westcon Group North America, Inc. In this Order, Westcon
will be referred to as "Comstor."

[8]Doc. No. 183, Ex. 21.

[9]*Id.*

[10]Doc. No. 143.

[11]*Id.*

try to reach an agreement on the Relators' share, and recommended that the parties review the award in *United States ex rel. Rille v. Hewlett-Packard Co.*[12] as a guide.[13]

Relators filed their Motion for Determination of Relators' Share on April, 2011.[14] The United States responded with its Cross-Motion to Dismiss Relators' claims for failure to plead with particularity.[15]

## II.    DISCUSSION

### A.    Cross-Motion to Dismiss

The Cross-Motion to Dismiss is very similar to the United States' efforts to have Relators' claims dismissed in *Hewlett-Packard*[16] -- in both cases, the United States argues that the Relators' claims should be dismissed under Rule 9(b) of the Federal Rules of Civil Procedure. A January 6, 2011 Order in *Hewlett-Packard* reads, in part:

> [t]he present situation is like that in *United States ex rel. Merena v. SmithKline Beecham Corp.*, in which the district court squarely rejected a motion to dismiss under Rule 9(b) after the case was settled and dismissed with prejudice. I am similarly disinclined to entertain a belated Rule 9(b) argument.[17]

The time for pointing out deficiencies under Rule 9(b) has passed.

---

[12]Case No. 4:04CV00989-BRW (E.D. Ark.), Doc. No. 143.

[13]Doc. No. 170.

[14]Doc. No. 177.

[15]Doc. No. 187.

[16]*United States ex rel. Rille v. Hewlett-Packard Co.*, Case No. 4:04CV00989-BRW (E.D. Ark.).

[17]*Id.*, Doc. No. 125 (quoting *United States ex rel. Merena v. SmithKline Beecham Corp.*, 52 F. Supp. 2d 420 (E.D. Pa. 1998) (reversed on other grounds, without discussion of the district court's Rule 9(b) analysis) ("Even if a timely motion had been made, and granted, undoubtedly the plaintiff would have been afforded an opportunity to replead and specify in detail. I consider this argument by the Government to be frivolous.").

**B.      Relators' Share of the Settlement**

Under the FCA, relators are entitled to a 15% to 25% share of the settlement proceeds when the Government proceeds with an action brought by the relators.[18] The percentage that should be awarded within this range depends on "the extent to which the [relator] substantially contributed to the prosecution of the action."[19] The statute itself provides no further guidance for determining the amount of a relator's share.[20]

Courts considering the amount of a relator's share of settlement proceeds have looked to various sources for guidance, including a Senate Report related to the 1986 amendments to the FCA,[21] the Department of Justice's ("DOJ") internal FCA guidelines, and the case law. The Senate Report factors are as follows: (1) the significance of the information provided to the government; (2) the contribution of the person bringing the action to the result obtained; and (3) whether the information that formed the basis for the suit was known to the government.[22] The legislative history of the False Claims Amendments Act of 1986 provides:

> If the Government comes into the case, the person is guaranteed a minimum of 15% of the total recovery even if that person does nothing more than file the action in federal court. This is in the nature of a "finder's fee" and is provided to develop incentives for people to bring the information forward. The person need do no more than this to secure an entitlement to a minimum 15%. In those cases where the person carefully develops all the facts and supporting documentation necessary to

---

[18]31 U.S.C. § 3730(d).

[19]*Id.*

[20]This paragraph, and several following it, were reproduced from a March 18, 2011 Order on Relators' Motion for Determination of Relators' Share of Settlement Proceeds in *United States ex rel. Rille v. Hewlett-Packard Co.*, Case No. 4:04CV00989-BRW (E.D. Ark.), Doc. No. 143.

[21]*United States ex rel. Alderson v. Quorum Health Group, Inc.*, 171 F. Supp. 2d 1323, 1332 (M.D. Fla. 2001) (*citing* S. Rep. No. 99-345, at 28 (1986)).

[22]*Id.*

make the case and presents it in a thorough and detailed fashion to the Justice Department as required by law, and where that person continues to play an active and constructive role in the litigation that leads ultimately to a successful recovery to the United States Treasury, the Court should award a percentage substantially above 15% and up to 25%.[23]

So, the 15% minimum share is "generally viewed as a finder's fee."[24] The maximum share is reserved for those situations in which the relators have "actively and uniquely assist[ed] the government in the prosecution of the case."[25]

The DOJ guidelines are a list of factors that may be relevant in determining the extent to which Relators "substantially contributed to the prosecution" of this action.[26] The DOJ lists as consideration for an *increase* in the percentage the following factors relevant to the present case:

(3) the *qui tam* filing, or the ensuing investigation, caused the offender to halt the fraudulent practices; (5) the complaint exposed a nationwide practice; (6) the relator provided extensive, first-hand details of the fraud to the Government; (7) the Government had no knowledge of the fraud; (8) the relator provided substantial assistance during the investigation and/or pre-trial phases of the case; (10) the relator's counsel provided substantial assistance to the Government;

---

[23]132 Cong. Rec. H9382-03.

[24]*United States ex rel. Alderson v. Quorum Health Group, Inc.*, 171 F. Supp. 2d 1323, 1331 (M.D. Fla. 2001) (citing legislative history).

[25]*United States ex rel. Johnson -Pochardt*, 252 F. Supp. 2d at 897 (quoting *United States ex rel. Burr v. Blue Cross & Blue Shield of Florida, Inc.*, 882 F. Supp.166, 168 (M.D. Fla. 1995)).

[26]They are not definitive factors that a court must follow, but are instructive despite that they have been subject to criticism. See *United States ex rel. Johnson Pochardt v. Rapid City Regional Hosp.*, 252 F. Supp. 892, 900 (D.S.D. 2003) (citing *United States ex rel. Alderson v. Quorum Health Group, Inc.*, 171 F.Supp.2d 1323 (M.D. Fla. 2001)).

and (11) the relator and his counsel supported and cooperated with the Government during the entire proceeding.

DOJ guidelines for consideration of a possible *decrease* in the percentage include the following: (4) the relator had little knowledge of the fraud or only suspicions; (7) the Government already knew of the fraud; (9) the case required a substantial effort by the Government to develop the facts to win the lawsuit; and (11) the FCA recovery was relatively large.

With these factors in mind, I now consider Relators' share of the settlement proceeds.

### 1.   Cisco

In connection with Cisco, the Government asserts that Relators' Complaint did not plead the fraudulent scheme that led to settlement. The Government contends that Relators alleged kickback schemes of which the Government found no evidence. Rather, the Government "found that Cisco and Comstor had fraudulently induced GSA to enter into a contract for the purchase of Cisco products by misrepresenting the nature of the commercial relationship between Cisco and Comstor."[27]

While Relators' Complaint focuses on a kickback scheme, the Complaint specifically alleges that Cisco entered into alliances with other companies and, through the alliances, misrepresented best pricing.[28] The Complaint reads, in part:

> In addition, as part of the schemes to defraud the Government and concealment, Defendants failed to provide to GSA and other government agencies current, accurate, and complete disclosure of their best pricing (after all discounts, rebates, and other benefits) for any entities, whether such sells to the Government or not, all in violation

---

[27]Doc. No. 188.

[28]Doc. No. 40.

of TINA and other laws and regulations, thereby causing defective GSA and other government pricing schedules. This resulted in FCA violations, as to both direct sales to the Government by a Defendant, and indirect sales through an SI, Alliance, or Technology Vendor, with or without a Kickback.[29]

As set out above, Covered Conduct under the settlement agreement included failure "to disclose relevant discount, rebate, true-up, benefits, credits, value-added, and pricing information," and "as a result of the defective disclosures of pricing information, [Comstor] submitted or caused to be submitted false or fraudulent claims for payment . . . ."[30] The allegations in Relators' Complaint appear to fit within the definition of Covered Conduct.

Relators pursued this case on their own for a significant amount of time. When the Government sought to intervene years after Relators filed suit, the Government cited 31 U.S.C. § 3730(c)(3), under which the court may "permit the government to intervene at a later date upon a showing of good cause."[31] The Government then provided that it "has received and considered additional information from the Relators." The Relators' contributions were apparently significant -- Relators provided 700,000 pages of documents in connection with this (and Relators' other) *qui tam* action and alerted the Government to the fraud. There is no evidence that Relators stopped participating in the prosecution of this case.

As for factors that work to decrease Relators' share, the Government also conducted an investigation and diligently prosecuted this case. Further, while Relators were the catalyst leading to the Government's settlement with Cisco, Relators were more focused on a kickback

---

[29]*Id*. at ¶ 7.

[30]Doc. No. 183, Ex. 21.

[31]Doc. No. 84.

scheme that the Government asserts did not exist. Lastly, the settlement in this case is large. I find that Relators are entitled to 17% of the $44.16 million settlement with Cisco.

### 2.    Comstor

With respect to Comstor, the Government asserts four reasons why Relators are not entitled to recover any part of the settlement proceeds. First, the Government contends that because  Relators' Third Amended Complaint never mentions Comstor, Relators cannot recover.[32] Second, the Government maintains that a GSA audit of Comstor was the source of the Government claims against Comstor.  Third, the Government argues that it did not settle in connection with conduct alleged by Relators. Fourth, the Government contends that Relators provided neither information nor assistance relating to Comstor.

Relators' Complaint never mentions Comstor. Relators, however, alleged alliances that were used to present defective pricing. The Government intervened in this action, and the action settled with respect to conduct that Relators alleged. That Comstor is not mentioned in Relators' Complaint would, under these circumstances, decrease Relators' award rather than eliminate it.

The Government contends that it had independent knowledge of Comstor's conduct through a GSA audit of Comstor.[33] The Government intervened in the case against Cisco, and settled this action with both Cisco and Comstor with respect to the Covered Conduct. Again, it seems to me that whether the Government knew of Cisco's conduct would, under these circumstances, go to decrease Relators' award rather than eliminate it. The DOJ Guidelines

---

[32]*Id.*

[33]Doc. No. 188.

likewise consider the Government's independent knowledge of the fraud in connection with the decrease of an award, rather than the abolition of it.[34]

The Government's third argument -- that the Government did not settle for conduct alleged by Relators -- was addressed above in connection with Cisco and need not be repeated here.

The Government also asserts that Relators did not provide information or assistance in connection with Comstor. Again, the Government intervened in this action. The settlement of this action was for joint conduct by Comstor and Cisco. Relators assisted indirectly, if not directly. This, too, should decrease Relators' recovery, but not deprive them of any share.

After careful consideration of the parties pleadings and the history of this case, I find that Relators are entitled to 15% of the $3.84 million settlement with Comstor.

## CONCLUSION

Relators will receive 17% of the $44.16 million settlement with Cisco ($7,507,200), and 15% of the $3.84 million settlement with Comstor ($576,000).

IT IS SO ORDERED this 19th day of September, 2011.


/s/Billy Roy Wilson
UNITED STATES DISTRICT JUDGE

---

[34]*United States ex rel. Alderson v. Quorum Health Group, Inc.*, 171 F. Supp. 2d 1323, 1333-34 (M.D. Fla. 2001).